UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO ANTHONY,

          Plaintiff,                              Case No. 4:03-cv-87

v.                                          Hon. Wendell A. Miles

LEE GILMAN and ANNE MICHELIN,
in their official and individual capacities,

          Defendants.

_____/

## OPINION

This matter is before the Court on Defendants' Rule 56(b) Motion for Summary Judgment. (Dkt. #153). For the reasons discussed below, the Court **denies in part and grants in part** Defendants' motion.

## BACKGROUND

On December 3, 2002, prison guards heard "loud banging sounds" coming from Plaintiff's cell. (Dkt. #27, Exhibit B). Upon investigation, the guards observed that Plaintiff had removed the metal cover to the electrical outlet, as well as the metal hasp of his foot locker, and was using this material to bang on the wall. (Second Amended Complaint at ¶ 10; Dkt. #27, Exhibit B).

Because of the safety issues presented by a prisoner possessing such items, Plaintiff was immediately removed from his cell and subjected to a strip search. (Second Amended Complaint at ¶14; Gilman Affidavit at ¶ 6). Plaintiff's cell was also searched. (Second Amended Complaint at ¶ 11). Plaintiff had "the bolts and metal pieces. . .wrapped in a piece of paper" which he surrendered to the

guards. *Id.* at ¶ 13. The guards, however, informed Plaintiff that "pieces of metal were missing." *Id.* at ¶ 15. Plaintiff was informed that he would be placed on "top-of-bed restraints" until the missing metal was returned. (Second Amended Complaint at ¶ 15; Gilman Affidavit at ¶ 10). Defendant Gilman authorized placing Plaintiff on top of bed restraints. (Gilman Affidavit at ¶ 6). Prison authorities were unable to locate the missing metal and Plaintiff was released from top of bed restraints seven days later. (Second Amended Complaint at ¶¶ 16-21; Gilman Affidavit at ¶ 8). Plaintiff was also convicted of a major misconduct for destroying property with a value exceeding ten dollars. (Dkt. #27, Exhibit B).

On December 7, 2002, while he was in top of bed restraints, Plaintiff allegedly informed Defendant Michelin that he needed to use the restroom. (Second Amended Complaint at ¶ 23). According to Plaintiff, Defendant Michelin, rather than provide him with a restroom break, instructed him to "use his bed." *Id.* Plaintiff asserts that Defendant Michelin failed to notify staff members of his request to use the restroom and, furthermore, failed to have his bedding or cell cleaned. *Id.* at ¶¶ 23-24.

Plaintiff asserted numerous claims against Defendants Smith, Gilman, and Michelin. Plaintiff claimed that the decision (allegedly made by Defendants Smith and Gilman) to place him in top-of-bed restraints violated his right to be free from unreasonable seizure. Plaintiff claimed that Defendants Smith and Gilman denied him the right to due process prior to placing him on top-of-bed restraints. Plaintiff claimed that the decision to place him in top-of-bed restraints constituted cruel and unusual punishment. Plaintiff further claimed that the decision to leave him in top-of-bed restraints for a seven day period also constituted cruel and unusual punishment. With respect to Defendant Michelin, Plaintiff claimed that she violated his Eighth Amendment rights by denying his request to use the restroom, instructing him to "use his bed" as a toilet, and failing to have his bedding or cell cleaned after he was forced to comply with this instruction.

Defendants subsequently filed a motion for summary judgment. (Dkt. #26). On June 18, 2004, Magistrate Judge Ellen Carmody recommended: (1) that Plaintiff's claims against Defendants Smith be dismissed; (2) that Plaintiff's claim against Defendant Michelin be permitted to go forward; (3) that Plaintiff's claims against Defendant Gilman, calling into question the initial decision to place him in top-of-bed restraints be dismissed; and (4) that Plaintiff's claims against Defendant Gilman, calling into question the decision to leave him in top-of-bed restraints for seven days be permitted to go forward. (Dkt. #52). Magistrate Judge Carmody further recommended that Plaintiff was not entitled to recover damages for alleged mental or emotional injury. *Id.* The Court adopted the Report and Recommendation on August 20, 2004. (Dkt. #68).

On May 5, 2005, Plaintiff submitted a Second Amended Complaint. (Dkt. #131). In his amended complaint, Plaintiff asserts that Defendant Gilman's decision to keep him in top-of-bed restraints for seven days violates his Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment right to due process of law. Plaintiff asserts that Defendant Michelin's refusal to clean his cell or to allow him to go to the restroom violates his Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment right to due process of law. Plaintiff also seeks permanent injunctive relief preventing the Michigan Department of Corrections from subjecting him to top-of-bed restraints. Defendants Gilman and Michelin have again moved the Court for summary judgment.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations

do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

### I.            Plaintiff's Eight Amendment Claim Against Defendant Michelin

Plaintiff asserts that Defendant Michelin denied him "regular breaks to use the toilet, forced him to lie in his own waste, and refused to clean his cell for seven days, and/or did not ensure that other MDOC employees took these steps." (Second Amended Complaint at ¶ 46).  Plaintiff asserts that Defendant Michelin's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.

There is no dispute that during the seven day period that Plaintiff was confined in top-of-bed restraints Defendant Michelin worked in Plaintiff's area of the facility on only one occasion - December 7, 2002 - for a single eight hour shift.  The parties do, however, dispute what transpired during this period of time.

Plaintiff asserts that "on several occasions" he requested that Defendant Michelin allow him to go to the bathroom.  (Anthony Deposition at 13).  According to Plaintiff, Michelin ignored his requests and on one occasion simply told him to "use your bed."  Plaintiff testified that he also informed Defendant Michelin that he needed his cell cleaned because he had soiled himself.  According to Plaintiff, Michelin refused his request.  *Id.*  Plaintiff's account is supported by the affidavits of three fellow prisoners.  (Dkt. #33).

Jerry Coleman asserts that on December 7, 2002, he heard Plaintiff "yell out" to Defendant Michelin that he had to "use the bathroom." (Dkt. #33, Coleman Affidavit). Coleman states that he heard Defendant Michelin respond to Plaintiff, "use your bed, I'm not coming in there with shit and piss all over the place." According to Coleman, Plaintiff asked Defendant Michelin to "have the porters clean his cell" and bring him clean bedding. Coleman asserts that Defendant Michelin ignored Plaintiff's request. *Id.*

Fred Reeves asserts that on June 25, 2003, he heard Plaintiff ask Defendant Michelin for a roll of toilet paper. (Dkt. #33, Reeves Affidavit). According to Reeves, Michelin responded to Plaintiff's request by stating, "wipe your ass on your mattress you piece of shit, when did you start using the toilet. I had you shitting all over yourself back in December while your ass was on T.O.B." Reeves asserts that Defendant Michelin then began "to mimick [sic] prisoner Anthony asking her for bathroom breaks and cell cleaning and clean bedding while he was on T.O.B. status back in December 2002." According to Reeves, Plaintiff then began to kick his cell door, at which point Michelin responded "get off that door Anthony before you end up on T.O.B. and I'll really see to it that you shit on yourself again." Michelin also allegedly told Plaintiff that she "would have him laying in feces." *Id.* Reeves' account is supported by the affidavit submitted by Floyd Jennings. (Dkt. #33, Jennings Affidavit).

Reeves further asserts that later that day (June 25, 2003) he asked Defendant Michelin "about prisoner Anthony having feces and urin[e] on hisself [sic] on December 7th while on T.O.B.." (Dkt. #33, Reeves Affidavit). According to Reeves, Michelin responded by laughing and stating that "yes he had shit all over himself and [expected] for me to enter that nasty ass cell. If I wanted to clean and play in shit I would have gotten a job in a nursery." Reeves asserts that he then asked Michelin, "so you left him laying in shit?," to which she responded, "hell yea, I can't stand his ass." According to

Reeves, he then asked Defendant Michelin whether anybody let him up to go the bathroom or clean his cell, to which Defendant Michelin responded, "hell no." *Id.*

To establish a violation of his Eighth Amendment rights, Plaintiff must establish that Defendant knowingly deprived him of the "minimal civilized measure of life's necessities." *See Hadix v. Johnson*, 367 F.3d 513, 525-26 (6th Cir. 2004). Plaintiff has presented evidence which, if believed by a jury, demonstrates that Defendant Michelin knowingly refused his requests to go to the bathroom and clean himself. Plaintiff has also presented evidence which, if believed by a jury, demonstrates that he was denied the "minimal civilized measure of life's necessities." *See, e.g., Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) ("deprivation of basic elements of hygiene" represents "base, inhuman and barbaric" conditions of confinement which violates the Eighth Amendment); *Mitchell v. Newryder*, 245 F.Supp.2d 200, 203-05 (D. Maine 2003) (claim by prisoner that he was forced to sit in his own waste for five hours states a claim for violation of the Eighth Amendment); *Masonoff v. DuBois*, 899 F.Supp. 782, 788 (D. Mass. 1995) (denial of "a sanitary place to dispose of one's bodily waste" violates the Eighth Amendment). In sum, there clearly exist questions of material fact regarding this particular claim. Accordingly, the Court concludes that Defendant Michelin is not entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

**II.          Plaintiff's Eighth Amendment Claim Against Defendant Gilman**

As noted above, the initial decision by Defendant Gilman to place Plaintiff in top-of-bed restraints did not run afoul of the Eighth Amendment. However, the Court further determined that there existed questions of material fact as to whether the decision to leave Plaintiff in top-of-bed restraints for seven days violated his Eighth Amendment rights. Specifically, the Court stated that:

> Although top of [bed] restraints may be necessary to control a situation, it is a violation of the Eighth Amendment to use them to punish an inmate. . .Thus, the question is 'how long would it take after placing Plaintiff in top of bed restraints before staff could be reasonably certain Plaintiff did not possess any metal pieces.'  The answer turns on how long it could reasonably be expected for a piece of metal to pass through Plaintiff's system. . .there is simply no evidence on the record that it would reasonably take up to seven days for a metal piece to pass through a person's digestive system.  Accordingly, there is a material fact in dispute.

(Dkt. #68 at 12-13).

Defendant Gilman has since stipulated that "it takes the average person 72 hours or less to pass metal through his or her digestive system." (Dkt. #160, Exhibit A).  Defendant nonetheless asserts that there existed a legitimate penological reason for keeping Plaintiff confined in top-of-bed restraints for seven days.  According to Defendant, it was necessary to keep Plaintiff in top-of-bed restraints for seven days because there existed a possibility that Plaintiff would, after excreting the piece of metal, simply re-ingest it rather than surrender it to prison officials.

At his deposition Defendant Gilman testified that serious security concerns are implicated whenever there exists a possibility that a prisoner may possess a piece of metal, as such can be used as a weapon or to unlock doors.  (Gilman Deposition at 27).  Defendant Gilman testified that on "numerous occasions" prisoners have avoided surrendering pieces of metal by "excret[ing] it and put[ting] it back in their mouth and swallow[ing] it again." *Id.* at 27, 66-67.  Defendant Gilman even testified that he had witnessed "numerous occasions where stuff has been recycled for months." *Id.* at 27.  According to Defendant Gilman, therefore, it is sometimes necessary to keep prisoners who may have ingested metal in top-of-bed restraints for a period of time beyond that necessary for the material to process through the digestive system a single time. *Id.* at 33-34.

As Defendant notes, Plaintiff has demonstrated (on more than one occasion) the willingness to handle and consume his own waste when it serves his purpose. (Dkt. #156, Exhibits 22-24). As Defendant further notes, Plaintiff's conduct renders him a serious and continual threat to the security of the facility and all those with him he comes into contact. Plaintiff has been convicted of 466 misconduct offenses. (Dkt. #156, Exhibit 4). While the majority of Plaintiff's misconduct violations involve various forms of sexual misconduct, he has also threatened to rape, stab, mutilate, or kill corrections officers. (Dkt. #156, Exhibits 5-13). Plaintiff has even threatened to "stick a piece of steel" in the neck of a corrections officer. (Dkt. #156, Exhibit 14). In addition to making threats, Plaintiff has on numerous occasions physically assaulted corrections officers. (Dkt. #156, Exhibits 16-21). Thus, it is not surprising that Defendant Michelin has characterized Plaintiff as "possibly. . .the worst prisoner in the state of Michigan." (Michelin Deposition at 42). In short, therefore, the threat posed by Plaintiff possessing a piece of metal was incredibly serious and placed at risk the safety of anybody with whom Plaintiff came into contact.

As the Court previously observed, the use of top-of-bed restraints is acceptable when accomplished for legitimate penological reasons, but violates the Eighth Amendment when used simply to punish an inmate. *See Stewart v. Rhodes*, 473 F.Supp. 1185, 1193 (S.D. Ohio 1979), *aff'd without op.* 785 F.2d 310 (6th Cir. 1986). According to Defendant Gilman, Plaintiff was placed in top-of-bed restraints because of the safety and security threat posed by his potential possession of a piece of metal. The Court concludes, however, that Defendant's decision to leave Plaintiff in top-of-bed restraints for seven days can reasonably be interpreted as a punitive measure bearing no relationship to any legitimate penological objective.

As previously noted, Plaintiff is a very dangerous prisoner and the possibility that he had ingested a piece of metal represented a serious safety and security concern.  This concern was so significant that the Constitution was not offended by the initial decision to subject Plaintiff to top-of-bed restraints.  Considering the danger almost certain to result if Plaintiff were permitted to possess a piece of metal, it would not be unreasonable to expect prison officials to take measures to ensure that Plaintiff not "recycle" any pieces of metal he may have ingested.

Accordingly, Defendant Gilman testified that whenever a prisoner "swallows metal" it is "standard operating procedure" to examine the prisoner's waste "for missing metal."  (Gilman Deposition at 42-43, 69).  As Gilman further stated, "in a case where you've got missing metal and you're assuming because you didn't find it through a search that the person ingested it, then it only makes sense that you would check the fecal matter." *Id.* at 43.

However, there is no evidence that prison officials in this matter took any action to prevent Plaintiff from "recycling" the pieces of metal which they assert he ingested.  Plaintiff asserts that during the time he was confined in top-of-bed restraints "no staff, officer, or nurse checked my feces or required that it be checked."  (Dkt. #160, Anthony Affidavit at ¶ 4).  In fact, when previously requested to admit that "no MDOC employee or agent caused Plaintiff's feces to be checked for pieces of the allegedly missing metal," Defendant Gilman denied that it was the responsibility of prison officials to examine Plaintiff's waste, instead asserting that "Plaintiff is responsible for turning over the missing metal to a staff member."  (Dkt. #122, Exhibit B at 4-5).  At his deposition, Defendant reiterated this position.  (Gilman Deposition at 69).  Furthermore, there is no evidence that the decision by Defendant Gilman to remove Plaintiff from top-of-bed restraints was based on any facts relative to whether Plaintiff still possessed pieces of metal.  As Defendant Gilman testified, the decision to remove Plaintiff from

top-of-bed restraints was an arbitrary decision not based on any objective facts.  (Gilman Deposition at 68).

Considering the threat level presented by Plaintiff potentially possessing a piece of metal, as well as Defendant Gilman's assertion that under such circumstances it was "standard operating procedure" to examine Plaintiff's waste, the lack of evidence that any prison official checked Plaintiff's waste (or undertook any other action to prevent him from "recycling" pieces of metal) and the arbitrary nature of the decision to remove Plaintiff from top-of-bed restraints can reasonably be interpreted as indicating that prison officials did not actually believe that Plaintiff ingested a piece of metal, thereby eliminating Defendant's stated rationale for confining Plaintiff in top-of-bed restraints.

Thus, a reasonable juror could conclude that Defendant Gilman's decision to leave Plaintiff in top-of-bed restraints for seven days was not related to any legitimate security concern, but was instead undertaken simply to punish Plaintiff.  Accordingly, Defendant Gilman is not entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

### III.        Plaintiff's Due Process Claims

Plaintiff asserts that Defendants' actions violated his due process rights.  Plaintiff has not indicated whether he is asserting a violation of his substantive or procedural due process rights.  To the extent that Plaintiff asserts a violation of his substantive due process rights, such claims are not cognizable as the Eighth Amendment sufficiently protects against the alleged violations described above. *Albright v. Oliver*, 510 U.S. 266, 273-75 (1994).

The court does not read plaintiff's Second Amended Complaint as alleging a violation of procedural due process.  "The fundamental elements of procedural due process are notice and an

opportunity to be heard."  Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353, 357 (6th Cir. 1992).  "For a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process."  Midkiff v. Adams County Regional Water Dist., 409 F.3d 758, 762 (6th Cir. 2005).  Here, however, plaintiff is not complaining of the lack of appropriate process or an opportunity to be heard.  Instead, he is claiming that his placement in restraints violated his rights because it was done "without legitimate penological purpose and for the purpose of punishing [plaintiff] by inflicting unnecessary and wanton pain, suffering, and humiliation on him."  Second Amended Complaint at 10, ¶ 51.  Therefore, plaintiff's claim is not that he was restrained without process, but that he was restrained for an improper purpose.  Such a claim is, however, subsumed into the specific analysis applicable to his Eighth Amendment claim.  See Walker v. Norris, 917 F.2d 1449, 1455 (6th Cir. 1990); see also Doe v. Sullivan County, Tenn., 956 F.2d 545, 556 (6th Cir.) ("the Fourteenth Amendment affords no greater protection than the Eighth Amendment for inmate claims alleging unlawful infliction of pain or punishment and, thus, . . . such claims fall solely under the Eighth Amendment"), cert. denied, 506 U.S. 864 (1992).  Accordingly, plaintiff's due process claim, which is based on the violation of his Eighth Amendment rights, is subject to dismissal as a matter of law.

**IV.          Plaintiff's Claim for Damages**

Defendants assert that because Plaintiff has failed to establish that he suffered a physical injury, he is not entitled to compensatory damages.  Plaintiff does not challenge this assertion.  Defendants further assert that "at most" Plaintiff is "entitled to nominal damages of one dollar."

While Plaintiff has cited to authority from the Fifth Circuit Court of Appeals for the proposition that nominal damages may exceed one dollar in certain circumstances, this is a position that the Sixth Circuit Court of Appeals appears not to have adopted. *See, e.g., Al-Jabbar A'la v. Hamby*, 1995 WL 478632 at *1 (6th Cir., Aug. 10, 1995) (limiting nominal damages to "one dollar") (citing *Franklin v. Aycock*, 795 F.2d 1253, 1264 (6th Cir. 1986)).  However, Plaintiff is correct that he may be entitled to punitive damages in this matter. *See Reilly v. Grayson*, 310 F.3d 519, 521 (6th Cir. 2002) (recognizing that prisoner was entitled to punitive damages where prison officials acted with "reckless. . .disregard of [inmate's] rights"); *Gregory v. Shelby County*, 220 F3d 433, 445 (6th Cir. 2000) (inmate entitled to punitive damages to compensate for "wanton and reckless" conduct).

Thus, to the extent that Defendants assert that Plaintiff is not entitled to compensatory damages in the absence of physical injury, the Court agrees.  The Court likewise agrees that nominal damages in this matter, if found to be appropriate, may not exceed one dollar.  However, to the extent that Defendants assert that Plaintiff may not (under any circumstances) be awarded punitive damages, the Court disagrees.

## V.        Plaintiff's Claim for Injunctive Relief

Plaintiff also requests that the Court permanently enjoin prison officials from placing him in top-of-bed restraints.  The Court has previously denied Plaintiff's request for such relief. (Dkt. #127).  The Court discerns no basis for reaching a different conclusion on this matter.  Accordingly, the Court dismisses this claim.

## CONCLUSION

For the reasons articulated herein, Defendants' Rule 56(b) Motion for Summary Judgment, (dkt. #153), is **granted in part and denied in part**.  Specifically, Defendants' motion is denied as to Plaintiff's Eighth Amendment claims.  Defendants' motion is granted as to Plaintiff's request for injunctive relief.  Defendants' motion is granted in part and denied in part with respect to the damages recoverable in this matter.  Defendants' motion is granted to the extent that Plaintiff alleges a violation of his due process rights.  An Order consistent with this Opinion will enter.


Date:  November 15, 2005                          /s/ Wendell A. Miles
                                                 Wendell A. Miles
                                                 Senior U.S. District Judge